**Marilyn J. KING, et al., Plaintiffs,**

v.

**CONSOLIDATED FREIGHTWAYS CORP. OF DELAWARE, et al., Defendants.**

Civ. No. 90–5120.

United States District Court, W.D. Arkansas, Fayetteville Division.

May 10, 1991.

Stephen L. Wood, Williams, Schrantz & Wood, Rogers, Ark., for plaintiffs.

Joseph, James Gilker, Gilker & Jones, Mountainburg, Ark., for Consolidated Freightways Corp.

Erwin L. Davis, Fayetteville, Ark., for Gary Belote.

### MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

This action was filed on October 31, 1990, by Marilyn and Dan King against Consolidated Freightways Corporation and Gary Belote. This is a Title VII action; 42 U.S.C. § 2000e *et seq.*, in which plaintiff, Marilyn King, asserts she was sexually harassed at work. Plaintiffs also assert pendent state law claims, *i.e.*, assault, battery, intentional infliction of emotional distress, and invasion of privacy.

Ms. King was employed as a billing clerk by the defendant, Consolidated Freightways, at its Springdale, Arkansas, terminal from March 3, 1989, to April 30, 1990. At the time of her employment, Gary Belote was the terminal manager at the Springdale location.

Ms. King alleges that she was repeatedly and continually harassed by Belote in an offensive and sexual manner. It is further alleged that all of the substantive allegations of the complaint occurred "during the regular working hours" ... "and in the course of Belote's scope of employment as the terminal manager." Finally, plaintiff alleges that Belote "was acting within the scope of his authority and Consolidated acquiesced in his actions against plaintiff Marilyn J. King." Ms. King states she repeatedly advised her superiors and other managerial officials of Belote's conduct. No action was taken until Ms. King's employment was terminated on April 30, 1990. Belote was also demoted and reassigned.

In the motion before the court, Consolidated seeks dismissal of plaintiffs' state tort claims contending that the tort causes of action fall within the exclusive remedy provision of Arkansas Workers' Compensation laws. Therefore, Consolidated argues that these causes of action are barred. Thus, the issue simply stated is whether the Arkansas Workers' Compensation laws provide the exclusive remedy for claims arising out of alleged sexual harassment in the workplace.

■ The Arkansas Workers' Compensation laws protect workers injured or killed from any accidental injury arising out of and in the course of employment. Ark. Code Ann. §§ 11–9–101 *et seq.* (1987). In all cases where it applies the Workers' Compensation Act supplants all other common-law rights of an employee.

Generally, the Arkansas Workers' Compensation law provides the exclusive remedy of an employee against his employer barring tort actions. Ark.Code Ann. § 11–9–105(a). The act further states that the "negligent acts of a co-employee shall not be imputed to the employer". *Id.* Injury is defined as "only accidental injury arising out of and in the course of employment...." Ark.Code Ann. § 11–9–102(4). "'Arising out of the employment' refers to the origin or cause of the accident while the phrase 'in the course of the employment' refers to the time, place and circumstances under which the injury occurred." *Gerber Products v. McDonald*, 15 Ark. App. 226, 691 S.W.2d 879, 880 (1985). The court further noted:

There must be a casual connection between the accident and risk which is reasonably incident to the employment.... There must be affirmative proof of a distinctive employment risk as the cause of the injury. The connection with the employment cannot be supplied by speculation.

*Gerber*, 691 S.W.2d at 881. "The controlling issue is whether the activity is reasonably expectable so as to be an incident of the employment, and thus in essence a part of it." *J. & G. Cabinets v. Hennington*, 269 Ark. 789, 600 S.W.2d 916, 918 (App. 1980).

Coverage is dependent on the existence of both of these requirements. That is, the injury must arise both out of and in the course of the employment. The first re-

quirement that the injury arise out of the employment focuses on the cause-effect relationship between the injury and the employment. The second requirement that the injury arise in the course of the employment is focused on whether the acts of the employee were in furtherance of the employer's interests.

■ The exclusive remedy provision may be avoided if the employee is able to show "actual, specific and deliberate intent by the employer to injure him. ...." *Griffin v. George's Inc.*, 267 Ark. 91, 589 S.W.2d 24, 27 (1979). Under those circumstances, the employment relationship is said to have been severed by the intentional actions of the employer and the employee may elect to proceed in tort. *Id. See also Heskett v. Fisher Laundry & Cleaners Co.*, 217 Ark. 350, 230 S.W.2d 28 (1950). However, "if the employer did not commit, command or authorize these acts then they were not intentional from his viewpoint." *Sontag v. Orbit Valve Co.*, 283 Ark. 191, 672 S.W.2d 50, 51 (1984). Thus, the "mere fact that an employer's supervisory employee injures another employee by inflicting an intentional tort is not cause to allow a common law action for damages against the employer." *Sontag*, 672 S.W.2d at 52.

Consolidated contends that the facts as alleged by plaintiffs in the complaint, demonstrate that Ms. King's injuries arose out of and in the course of her employment. Moreover, Consolidated argues this case does not fit within the intentional tort exception recognized in Arkansas because it, the employer, did not command or order Belote to commit the alleged intentional torts. In opposition, plaintiffs contend that the sort of sexual assault, harassment, and emotional trauma caused by Belote's actions are not a hazard or risk inherent in Ms. King's employment with Consolidated as a billing clerk.

A number of courts have specifically addressed the question of whether sexual assaults or sexual harassment of an employee is compensable under a workers' compensation act. Various jurisdictions have held that sexual assault and/or sexual harassment claims are compensable under the workers' compensation laws. See cases collected in Annotation, *Workers' Compensation: Sexual Assaults as Compensable*, 52 A.L.R.4th 731. *See also Zabkowicz v. West Bend Co. Div. of Dart Industries, Inc.*, 789 F.2d 540, 544–45 (7th Cir.1986) (applying Wisconsin's law); *Lui v. Intercontinental Hotels Corp.*, 634 F.Supp. 684 (D.C.Hawaii 1986); *Brown v. Winn–Dixie Montgomery, Inc.*, 469 So.2d 155 (Fla.App. 1 Dist.1985) (en banc). Others have held such actions are not barred as they are the result of purely personal and private quarrels and do not arise out of "frictions generated by the work itself" or a dangerous work environment. *Pryor v. United States Gypsum Co.*, 585 F.Supp. 311 (W.D.Mo.1984). *See also* Annotation, *Workers' Compensation: Sexual Assaults as Compensable*, 52 A.L.R.4th 731 (1987).

Courts faced with this issue have looked at a variety of factors: whether the risk of harm is related to or created by the conditions under which the employment is to be performed; whether the sexual assault stems from personal motivations unrelated to the employment; and, whether the risk of harm is a distinctive risk of employment. It appears to be undisputed that at least a portion of incidents in question occurred "in the course of" Ms. King's employment. The incidents occurred during a time when Ms. King was required to be at a specific place at a specific time. The real question is whether the alleged incidents can be said to have "arisen out of" the employment relationship. That is, whether there is a casual connection between work conditions and the injury. This determination of course, depends largely on the particular factual situation presented.

Five different tests have been utilized in the application of this "arising out of" language: peculiar-risk doctrine, increased-risk doctrine; actual-risk doctrine; positional-risk doctrine; and the proximate cause test. 1 Larson, Workmen's Compensation Law §§ 6.00, 6.20 to .60 at 3–1, 3–4 to –11 (1985). The Arkansas courts seem to lean toward utilization of the increased-risk doctrine. *See e.g., Gerber*, 691 S.W.2d at 881. *See In re Question Submitted by United*

*States Court of Appeals for Tenth Circuit,* 759 P.2d 17 (Colo.1988) (applying three part positional-risk test).

Literal application of at least one of these tests, the positional-risk doctrine, has led to the conclusion that sexual assaults fall within the workers' compensation laws. *See e.g. In re Question Submitted by United States Court of Appeals for Tenth Circuit, supra,* where the court concluded sexual assault (rape) by a co-worker was compensable. Other cases, although recognizing the trend toward broad expansion of the coverage of workers' compensation laws, have held that acts constituting sexual harassment are not meant to fall under workers' compensation laws. *See e.g., Byrd v. Richardson–Greenshields Securities, Inc.,* 552 So.2d 1099 (1989). The *Byrd* court in so holding stated:

> There can be no doubt at this point in time that both the state of Florida and the federal government have committed themselves strongly to outlawing and eliminating sexual discrimination in the workplace, including the related evil of sexual harassment. The statutes, case law, and administrative regulations uniformly and without exception condemn sexual harassment in the strongest possible terms. We find that the present case strongly implicates these sexual harassment policies and, accordingly, may not be decided by a blind adherence to the exclusivity rule of workers' compensation statute alone.

*Id.* at 1102.

After reviewing both Title VII and similar state enactments the court stated: "[p]ublic policy now requires that employees be held accountable in tort for the sexually harassing environments they permit to exist, whether the tort claim is premised on a remedial statute or on the common law." *Id.* at 1104. *See also* Ark.Code Ann. §§ 11–4–601 to 11–4–612, 21–1–201.

Additionally, it was noted that the workers' compensation laws are directed at compensating a worker for lost resources and earnings while sexual harassment laws are concerned with intangible personal rights. "While workplace injuries rob a person of resources, sexual harassment robs the person of dignity and self esteem." *Id.* *See also Ford v. Revlon,* 153 Ariz. 38, 734 P.2d 580 (1987).

We find these latter cases persuasive and believe that when faced with the issue the Arkansas courts will hold that claims of sexual harassment fall outside the purpose and intent of the workers' compensation law. As the *Byrd* court noted "sexual harassment should not and cannot be recognized as a 'risk' inherent in any work environment." *Id.* "Sexual harassment is not a risk to which an employee is exposed because of the nature of the employment but is a risk to which the employee could be equally exposed outside employment. Therefore, [plaintiff's] claim is neither covered nor barred by the [Workers' Compensation] Act." *Hogan v. Forsyth Country Club, Co.,* 79 N.C.App. 483, 340 S.E.2d 116, 124 (1986). *See also Pryor,* 585 F.Supp. at 316; *Harrison v. Edison Bros. Apparel Stores, Inc.,* 724 F.Supp. 1185 (M.D.N.C.1989).

For the reasons stated, the motion for partial summary judgment is denied.